In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2486

Timothy K. Ueland,

Plaintiff-Appellant,

v.

United States of America,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 2960--John W. Darrah, Judge.

Argued May 16, 2002--Decided June 3, 2002


   Before Easterbrook, Rovner, and Diane P.
Wood, Circuit Judges.

   Easterbrook, Circuit Judge.  A collision
between a prison van and its chase car
has led to this suit under the Federal
Tort Claims Act. The van was carrying
four prisoners from the federal prison in
Pekin, Illinois, to the Metropolitan
Correctional Center in Chicago. The
driver of the chase car, trailing the van
for security, was supposed to ensure that
no other vehicle would come between the
two. During stop-and-go driving on a
congested road, the chase car hit the
van. According to the Bureau of Prisons,
the relative speed of the collision was
between 5 and 10 miles per hour, all
prisoners had been wearing seat belts, no
injuries ensued, and the van (which
suffered no damage from the impact) drove
to its destination. According to Timothy
Ueland, the plaintiff in this case, none
of the prisoners had been secured with a
seat belt, and he was thrown violently by
a high-speed impact into the "cage" at
the front of the van. Ueland contends
that he suffered back and neck injuries
that have caused him great pain.

   Ueland's testimony at trial was
supported by a chiropractor and in part
by James Reed, a physician at the federal
prison to which Ueland was transferred
following his detention in Chicago. Dr.
Reed testified that Ueland has serious
back injuries. The United States'

position was supported by the testimony of three guards who participated in the transportation plus that of Dr. Reed, who opined that Ueland's back problem predated the accident. At the close of trial, the district judge ruled from the bench. The judge did not make findings on any of the concrete disputes (such as whether the prisoners had the benefit of seat belts, the speed difference between the van and the car at the time of the impact, whether the shock threw the prisoners forward, and what the medical consequences for Ueland had been). Instead, after reciting a few uncontested points, such as that a collision had occurred and that the chase car's driver had been negligent, the judge stated:

I further find, however, that the defendant [sic: must mean Ueland] has failed to meet its [sic] burden of proof that this negligent conduct of the operator of the vehicle following the one in which the plaintiff was riding was the proximate cause of any injuries to the plaintiff. And I further find that the plaintiff has failed to meet its--his burden of proof that the plaintiff suffered any damages as a result of the negligence of the defendant. Therefore, the complaint filed by the defendant [sic] herein and the relief sought is denied, and judgment is entered on that complaint in favor of the defendant United States.

These uninformative conclusions do not satisfy Fed. R. Civ. P. 52(a), which says that "[i]n all actions tried upon the facts without a jury . . ., the court shall find the facts specially and state separately its conclusions of law thereon". Here the district judge did not find any facts or reveal his resolution of any of the factual disputes that had received attention at trial. Cf. Jutzi-Johnson v. United States, 263 F.3d 753 (7th Cir. 2001). We cannot rectify this by remanding for compliance with Rule 52, because the judge also committed a serious evidentiary error.

Ueland offered as substantive evidence the deposition of Chong-Won Tai, another of the prisoners in the van. This deposition, taken by the United States in a separate lawsuit, provided evidence

supporting Ueland's description of the events. Chong-Won Tai testified that the van had been going fast and suddenly decelerated before the collision, implying that the relative speed of the impact was high; he also testified that the prisoners had not been wearing seat belts and that the force threw them against the cage. The Assistant United States Attorney objected on hearsay grounds. (Actually, the district judge objected for her, and she then chimed in to support the judge's order sustaining his own objection.) Yet the deposition could not properly be excluded as hearsay.

At the trial . . . any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions: . . .

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

(A) that the witness is dead; or

(B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the partyoffering the deposition; or

(C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or

(D) that the party offering the deposition has been unable to procure the attendance

of the witness by
subpoena; or

(E) upon application and
notice, that such exceptional
circumstances exist as
to make it desirable, in
the interest of justice
and with due regard to
the importance of
presenting the testimony
of witnesses orally in
open court, to allow the
deposition to be used.

Fed. R. Civ. P. 32(a)(3). Ueland's lawyer
pointed out that Chong-Won Tai was being
held by the United States at a prison
more than 100 miles from Chicago, making
the deposition admissible under Rule
32(a)(3)(B). In excluding the deposition
as hearsay, the district judge relied on
Fed. R. Evid. 804, treating the testimony
as out-of-court statements offered for
the truth of the matter stated. Yet Rule
32(a) says that a deposition may be used
if "admissible under the rules of
evidence applied as though the witness
were then present and testifying". If
Chong-Won Tai had been "then present and
testifying", none of his statements could
have been excluded as hearsay. He was
reporting what he claims to have
experienced, not relaying what someone
else told him. Rule 32(a), as a free-
standing exception to the hearsay rule,
is one of the "other rules" to which Fed.
R. Evid. 802 refers. Evidence authorized
by Rule 32(a) cannot be excluded as
hearsay, unless it would be inadmissible
even if delivered in court. See Angelo v.
Armstrong World Industries, Inc., 11 F.3d
957, 962-63 (10th Cir. 1993); Southern
Indiana Broadcasting, Ltd. v. FCC, 935
F.2d 1340, 1342 (D.C. Cir. 1991); United
States v. Vespe, 868 F.2d 1328, 1339 (3d
Cir. 1989); Carey v. Bahama Cruise Lines,
864 F.2d 201, 204 (1st Cir. 1988).

Use of depositions as substantive
evidence is normal in federal practice.
What is even more disappointing than the
district judge's spontaneous refusal to
admit the deposition is the United States
Attorney's defense of that decision. A
claim of harmless error would not be
tenable (and is not made); the judge
hearing Chong-Won Tai's own suit believed
his testimony and awarded him $900 in
damages. Instead the United States asks

us to condition the use of any deposition on proof that determined attempts to bring the witness to court had failed-- here by asking the district judge to issue a writ of habeas corpus ad testificandum. In other words, the United States contends that Rule 32(a)(3)(D) should be the exclusive ground of admissibility, and that no separate function should be allowed to Rule 32(a)(3)(B). This is not a tenable reading of the rule. Subsection (3) lists five circumstances that make a deposition admissible as substantive evidence. These are separated by the word "or"; satisfying any one of the subsections thus is enough. Subsection (3)(B) says that a deposition is admissible if "the witness is at a greater distance than 100 miles from the place of trial or hearing . . . unless it appears that the absence of the witness was procured by the party offering the deposition". The party offering the deposition is forbidden to procure the deponent's absence (or distance); this is a far cry from requiring the litigant to procure the deponent's presence. It is the United States that by holding Chong-Won Tai captive has placed him outside the 100-mile radius from the court. The United States readily could have produced him in Chicago if it wanted to cross-examine him in the judge's presence. It does not sit well for the United States to chastise Ueland for employing a deposition rather than live testimony.

True enough, if Ueland had relied exclusively on Rule 32(a)(3)(C)--which allows use of a deposition if "the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment"--then imprisonment alone would not have sufficed. Only if imprisonment makes the witness "unable" to attend does subsection (3)(C) authorize the deposition's use. If the deponent had been in the Metropolitan Correctional Center a few blocks from the courthouse, Ueland should have asked the United States to produce him. In this respect subsections (3)(C) and (3)(D) are similar; both depend on unavailability. Subsection (3)(B), by contrast, does not condition admissibility on the witness' inability to show up in court; 100 miles is a bright line. Chong-Won Tai was located outside that line and the United States does not contend that Ueland

"procured" his absence, so Ueland was entitled to use the deposition as substantive evidence.

The United States Attorney principally relies on Polys v. Trans-Colorado Airlines, Inc., 941 F.2d 1404, 1410 (10th Cir. 1991), which states that a court is "not automatically required to admit the deposition testimonies under Federal Rule of Civil Procedure 32(a)(3)(B) just because the witnesses were more than 100 miles away". That language has been quoted out of context. The district court excluded some proffered evidence, and the proponent did not make an offer of proof. Thus the decision was reviewable only for plain error. Fed. R. Evid. 103(a)(2), (d). The court's point was that Rule 32(a) does not work "automatically" in the sense that it relieves lawyers of their obligation to make an offer of proof. That's not a problem in our case. The tenth circuit added that Rule 32(a) does not prevent a judge from excluding evidence on grounds other than the hearsay rule, such as surprise to opposing counsel. Again that's not a problem; the district judge relied exclusively on his belief that the deposition was hearsay. (Chong-Won Tai was on Ueland's witness list, and as his custodian the United States knew full well that he would not be in court and therefore would be testifying by deposition.) Polys does not stand for the proposition for which the United States Attorney used it: that the proponent must try and fail to procure live testimony before offering a deposition under Rule 32(a)(3)(B). Nor does any other appellate decision support that view, and at least one rejects it. See Daigle v. Maine Medical Center, Inc., 14 F.3d 684, 691 (1st Cir. 1994). We are the second. As is true for many legal points, the paucity of support in appellate opinions does more to show that the proposition is too clear to be questioned than to show that it is debatable.

Because this case must be tried anew, we discuss briefly some issues that have been covered in the appellate briefs and are apt to arise again on remand.

Ueland's principal "medical" testimony came from Jason Wilson, a college dropout who claims to be a chiropractor with a practice limited to acupuncture. Wilson

is not an osteopath, and the United States questioned his qualifications to give expert testimony about the etiology of back and neck injuries. See Fed. R. Evid. 702; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) (Rule 702 applies to non-scientific expert evidence). The district judge refused to apply Rule 702 or conduct a Daubert inquiry, ruling instead that Wilson's lack of credentials and experience concerns only the weight to be accorded to his testimony. That ruling is wrong. On remand, a Daubert inquiry must be conducted, and Wilson's testimony may be received only if he is "qualified as an expert by knowledge, skill, experience, training, or education . . . [and] (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

The trial encountered a related problem about expertise. The Assistant United States Attorney asked questions of Wilson, Dr. Reed, and Ueland himself designed to show that Ueland's back problem predated the collision. This subject was relevant, because the questions tended to undermine Ueland's claim of causation, an essential ingredient of a tort. See Voykin v. Estate of DeBoer, 192 Ill. 2d 49, 57, 733 N.E.2d 1275, 1279 (2000). (The substantive rules in this ftca case come from Illinois law. See 28 U.S.C. sec.sec. 1346(b)(1), 2674.) But the questioning did not begin with a demonstration that each witness was well situated to deliver a reliable opinion on the matter. Ueland could be asked to describe his symptoms; a first-party, factual narration does not depend on expertise. But, Ueland contended at trial, neither Wilson nor Reed could be asked about this subject without first qualifying as an expert. Once again the district judge brushed aside the objection, opining that it concerned only the weight of the evidence; once again this entailed an error that should not be repeated on remand.

Ueland attributes the expertise requirement to Voykin, which says that

expert testimony about the nature and consequence of the prior injury is essential to "relevance." That's poor diction. Evidence is relevant if it possesses "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence that the plaintiff's injury predated the supposed tort has such a tendency. It is not as if Illinois wanted to exclude a particular line of exculpation and thus affect primary conduct--as, for example, a rule banning reference to seatbelt non-use tends to do; see Barron v. Ford Motor Co., 965 F.2d 195 (7th Cir. 1992). The problem here concerns not relevance but reliability, which is the domain of forum law. Rule 702 covers this ground and makes Voykin, well, irrelevant (and unnecessary too). Neither Wilson nor Reed had any personal knowledge of Ueland's medical condition before the collision; neither began to treat him until some time afterward. Their testimony about Ueland's medical condition before the collision was admissible only if based on sufficient facts, analyzed using medically appropriate methods by a person competent to give an opinion. Acupuncturist Wilson probably flunks this test (though the district judge is free to inquire further on remand); physician Reed may or may not pass, depending on what evidence he gathered and whether his fields of expertise include back and soft-tissue injuries.

One other dispute related to Reed may crop up on remand. Before trial, Ueland's lawyers repeatedly conferred with Dr. Reed, in apparent violation of 28 C.F.R. sec.sec. 16.21-16.29, which provide that private litigants and their lawyers may contact federal employees only under defined circumstances--principally through discovery depositions, when a lawyer for the United States will be present, though affidavits and other means are available too. An Assistant United States Attorney informed Dr. Reed of these rules, and he ceased talking with Ueland's lawyers, who then applied for relief from the district court. Ueland made two contentions: first, that his lawyers should be allowed unrestricted confidential access to Reed; second, that the United States should be

precluded from eliciting any testimony from Reed at trial, as a sanction for its supposed ex parte contacts with him.

In response to the first argument, the Assistant United States Attorney filed a memorandum discussing the regulations that govern the means of obtaining information from federal employees. The district judge refused to read this memorandum or listen to argument on the subject. Instead he peremptorily announced that, because the Supreme Court had required President Nixon to provide evidence, see United States v. Nixon, 418 U.S. 683 (1974), no limits may be placed on private lawyers' contacts with federal employees. We have no idea how the Nixon case could be thought to support that proposition. It dealt with a grand jury subpoena for documents, not with secret meetings designed to elicit oral admissions. (Ueland contended at trial that any helpful information Reed provided, in or out of court, was admissible under Fed. R. Evid. 801(d)(2) as an admission by a party opponent.) District judges must implement federal regulations, no less than federal statutes, and we have held that sec.sec. 16.21-16.29 are valid. See Edwards v. Department of Justice, 43 F.3d 312, 317 (7th Cir. 1994). Access to federal employees who may have evidence remains available through the normal discovery process. (The United States produced Reed for a deposition and again at trial.) Similarly, 5 C.F.R. sec.2635.805 defines the circumstances under which a federal employee such as Dr. Reed may be an expert witness as opposed to a fact witness on Ueland's behalf. The district court, which failed to apply this regulation during the first trial, must do so on remand.

Because it was Ueland's counsel, rather than the Assistant United States Attorney, who erred in speaking off the record with Reed, there is no basis for preventing the United States from eliciting testimony from him at a second trial. Ueland relies on Petrillo v. Syntex Laboratories, Inc., 148 Ill. App. 3d 581, 499 N.E.2d 952 (1st Dist. 1986), for the proposition that a litigant may not meet in private with the other side's treating physician. We doubt that Petrillo had in mind a situation where the plaintiff's physician is the

defendant's employee (in Petrillo there was no affiliation between the physician and the adverse party). How could a court demand that the Bureau of Prisons have no contact with its staff physicians, or even that federal lawyers not talk with federal physicians (who may be needed as witnesses in many cases pending simultaneously)? Intoning "physician-patient privilege" gets Ueland nowhere: the Bureau of Prisons is entitled to up-to-date medical information about persons in its custody--indeed is constitutionally obliged to obtain that information, in order to prevent the infliction of cruel and unusual punishment--so it is entirely legitimate for Dr. Reed to tell both prison administrators and federal lawyers what he knows about Ueland's condition. No rule of state law could block the national government from obtaining medical information from a federal prison's staff physician; the Supremacy Clause makes state law subordinate to federal, not the reverse. (The rule articulated in Petrillo is not designed to alter primary conduct, so it is not absorbed into federal law by sec.1346(b) or sec.2674.) This is not to say that the federal government could gratuitously reveal a prisoner's medical information to third parties; Ueland may have some privilege with respect to particular uses of information. But he does not contend that counsel has wrongfully revealed any medical information learned from Reed. Instead Ueland makes a categorical argument: that a lawyer representing the United States may not meet at all, for any purpose, with a federal employee who has provided medical care to that prisoner. That proposition has no support in either state or federal law.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion. Circuit Rule 36 applies automatically on remand.