# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-2931

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ABDUL RAIMI MAMAH,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 CR 396—**Charles P. Kocoras**, *Chief Judge.*

———————

ARGUED JANUARY 29, 2003—DECIDED JUNE 11, 2003

———————

Before COFFEY, EASTERBROOK, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Abdul Mamah, a Ghanaian immigrant, was charged with one count of possession with intent to distribute in excess of 100 grams of heroin in violation of 21 U.S.C. § 841(a)(1). At trial Mamah sought to introduce testimony from two expert witnesses in support of his claim that the confession he gave to the FBI after his arrest was false. The district court ruled the testimony of both experts inadmissible, and a jury subsequently found Mamah guilty. On appeal Mamah argues that the court excluded his expert witnesses in violation of Federal Rule of Evidence 702. We affirm.

In May 2000 Mamah told Falilat Giwa that he planned to travel to Chicago, Illinois, to engage in a narcotics transaction. Unbeknownst to Mamah, Giwa was a confidential informant for the FBI and was taping their telephone conversation on instructions from Special Agent Thomas Wilson.

Mamah subsequently flew from Tulsa, Oklahoma, to Chicago to meet Giwa and checked into a hotel. When Giwa arrived at the hotel to buy narcotics from Mamah, she was accompanied by Agent Wilson and several other FBI agents. Because Agent Wilson was apprehensive about allowing Giwa to enter Mamah's hotel room alone, Giwa phoned Mamah to request that he meet her in the lobby. When Mamah refused, Agent Wilson left the hotel to obtain a search warrant while Agent John Schulte remained behind to monitor the exits in case Mamah attempted to leave. After an hour, Agent Schulte observed Mamah step from an elevator into the lobby and approached him. After identifying himself as an FBI agent, Agent Schulte obtained Mamah's consent to search his hotel room. During their search, agents discovered $5000 in currency wrapped in newspaper and a plastic bag containing 300 grams of heroin hidden behind the drapes.

Mamah was arrested and taken to the FBI office in downtown Chicago, where he received *Miranda* warnings and agreed to an interview. Mamah initially denied knowledge of the heroin recovered from his room but eventually admitted his guilt in a statement that Agent Wilson transcribed and Mamah signed.

Part of Mamah's defense was his claim that he falsely confessed. Before trial Mamah had moved the court to admit the expert testimony of Dr. Deborah Pellow, an anthropologist, and Dr. Richard Ofshe, a sociologist. According to Mamah's filings, Dr. Pellow, a specialist in the culture of Ghana, would testify that behaviors adopted by Ghanaians in response to living under a military regime could lead

them to make false confessions when confronted by law enforcement authorities. Dr. Ofshe, a sociologist who has published extensively on the phenomenon of false confessions, would explain how certain interrogation techniques can lead innocent suspects to falsely confess.

The district court concluded that the proposed testimony of both Dr. Pellow and Dr. Ofshe was unreliable and thus inadmissible under Rule 702. The court reasoned that neither Dr. Pellow nor Dr. Ofshe was a clinical psychologist qualified to assess Mamah's susceptibility to the interrogation techniques used by the FBI agents. The court had additional concerns about Dr. Pellow's testimony. First, the court noted that Mamah had been living in the United States since 1984, more than enough time to have learned the difference between Ghanaian and American law-enforcement practices. Further, since Mamah claimed that he had been detained and beaten while still living in Ghana, the court viewed the relevance of Dr. Pellow's testimony as dependent upon similarities between this incident and the FBI agents' interview of Mamah. But, the court noted, Mamah had not accused the FBI agents of engaging in tactics similar to those purportedly common in Ghana, and so any mention of Mamah's mistreatment at the hands of Ghanaian authorities would be overly prejudicial and confusing to the jury.

At trial Agent Wilson testified that Mamah had received *Miranda* warnings and then signed a waiver form before dictating his confession. Agent Wilson asserted that he went over the statement with Mamah line by line before Mamah signed it. Mamah testified that Agent Wilson had used abusive language during the interview and warned Mamah that he would get life imprisonment and never see his children again unless he cooperated. According to Mamah, his oral statement did not correspond to the written statement, which, at the agents' direction, he had signed without reading. Mamah testified that he had no idea how the heroin came to be in his hotel room.

Mamah's sole contention on appeal is that the district court erred in finding the expert testimony of Dr. Pellow and Dr. Ofshe inadmissible under Rule 702 and *Daubert v. Merrell Dow Pharmacueticals*, 509 U.S. 579 (1999). We begin our analysis by looking at the actual text of Rule 702, which was amended in 2000 in response to *Daubert* and *Kumho Tire Company v. Carmichael*, 526 U.S. 137 (1999). *See* Fed. R. Evid. 702 advisory committee's note. The new Rule 702 lists three criteria for courts to consider when determining the admissibility of expert testimony. *See United States v. Conn*, 297 F.3d 548, 556-57 (7th Cir. 2002); *Ueland v. United States*, 291 F.3d 993, 997 (7th Cir. 2002). The first of these is that the expert's opinions be "based upon sufficient facts or data," and neither Dr. Pellow's nor Dr. Ofshe's proposed testimony met this requirement.

Mamah argues that excluding the testimony of Dr. Pellow and Dr. Ofshe was tantamount to a statement that social science can never form the basis of expert testimony. We acknowledge that social scientists frequently testify as experts, and their opinions are "an integral part of many cases." *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996). But whether social science studies can ever be a proper foundation for an expert's opinion is not the issue here. The issue is whether *these* social science studies, the research of *these* experts, sufficiently supported the expert opinions Mamah wanted to present to the jury—and they did not. *Cf. Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144 (1997) ("[W]hether animal studies can ever be a proper foundation for an expert's opinion was not the issue. The issue was whether *these* experts' opinions were sufficiently supported by the animal studies on which they purported to rely.").

Mamah contends that the district court disregarded Dr. Pellow's and Dr. Ofshe's impressive educational backgrounds and professional accomplishments in ruling their

testimony inadmissible. In doing so, Mamah is conflating subpart (1) of Rule 702, the requirement for "sufficient facts and data," with subpart (2) of Rule 702, the necessity for "a reliable foundation in principles and method." *See Micron Chem., Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1392 (Fed. Cir. 2003). Whether or not Dr. Pellow and Dr. Ofshe grounded their work in sound social science principles and methods, the court still needed to satisfy itself that their work yielded facts and data sufficient to support their proposed testimony. As we have observed, "experts' opinions are worthless without data and reasons." *Kenosha v. Heublein,* 895 F.2d 418, 420 (7th Cir. 1990); *see also Elliott v. CFTC,* 202 F.3d 926, 934 (7th Cir. 1998).

It is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support. *See Gen. Elec.,* 522 U.S. at 146 ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). The court is not obligated to admit testimony just because it is given by an expert. *Id.* ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert."). The problem with the proposed testimony in this case does not lie in the quality of Dr. Pellow's and Dr. Ofshe's research. Rather the problem is the absence of an empirical link between that research and the opinion that Mamah likely gave a false confession. *See id.*

Mamah argues that Dr. Pellow would have testified that what he experienced in Ghana predisposed him to manipulation and intimidation during his interrogation by FBI agents. Such an opinion, however, would fall outside the scope of Dr. Pellow's work, which concentrates upon Ghanaian culture. Dr. Pellow's testimony may have been useful in answering questions about how a repressive mili-

tary regime shapes Ghanaian behavioral patterns, but those questions were not pertinent here because the interrogation in this case did not occur in Ghana and Mamah has not lived in Ghana since 1984.

Dr. Pellow's expertise is limited to the cultural practices of Ghanaian nationals living in Ghana; she has no basis for extrapolating this conclusion to Mamah, a Ghanaian ex-patriot. Had she offered an empirical study demonstrating that Ghanaian ex-patriots who have lived in the United States for more than ten years are unusually likely to give false confessions, then perhaps she could have established this link. But Dr. Pellow did not have at her disposal sufficient facts and data to support the proposition that Mamah's cultural background might have induced him to give a false confession.

Dr. Ofshe's testimony was inadmissible for similar reasons. He could testify that false confessions do occur, but he could not establish that Mamah was interrogated under circumstances that could produce a false confession. Without an indication that Mamah was unusually susceptible to the FBI agents' methods of interrogation, Dr. Ofshe could not connect his research to the particulars of Mamah's case. Had Dr. Ofshe been able to testify that an individual who, like Mamah, is subjected to coercive interrogation tactics on one occasion will give a false confession on a second occasion when he is not subjected to coercive interrogation tactics, then perhaps his proffered testimony would have survived Rule 702. But the facts and data that Dr. Ofshe disclosed before trial in his expert report did not support such an opinion.

AFFIRMED.

No. 02-2931    7

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*