Opinion by Judge RAWLINSON; Concurrence by Judge TASHIMA; Concurrence by Judge GRABER.
OPINION
RAWLINSON, Circuit Judge:
AstenJohnson, Inc. (AstenJohnson) and Scapa Dryer Fabrics, Inc. (Scapa), appeal the district court’s entry of judgment in favor of Henry and Geraldine Barabin following a jury trial resolving Henry Barabin’s claim that his mesothelioma was caused by occupational exposure to asbestos. AstenJohnson and Scapa manufactured dryer felts that contained asbestos and that were installed on paper machines used in the paper mill where Henry Barabin worked. As now relevant, AstenJohnson and Scapa contend that the district court abused its discretion by improperly admitting expert evidence.
*430 We have jurisdiction pursuant to 28 U.S.C. § 1291. Because the district court failed to fulfill its obligations under Daubert,[1] we vacate the judgment and remand for a new trial.[2]
I. BACKGROUND
A. Pre-trial motions and trial proceedings
Henry Barabin was exposed to asbestos from 1964 through 1984. He was employed from 1968 until his retirement in 2001 at the Crown-Zellerbach paper mill, which used dryer felts containing asbestos supplied by AstenJohnson and Scapa. During his employment, Henry worked in various jobs that exposed him to the dryer felts that AstenJohnson and Scapa provided. Henry also took pieces of dryer felt home to use in his garden.
In November, 2006, Henry was diagnosed with pleural malignant epithelial mesothelioma.[3] It is undisputed that exposure to respirable asbestos causes mesothelioma.
AstenJohnson filed a motion in limine to exclude Drs. Cohen[4] and Millette as expert witnesses. The district court excluded Dr. Cohen as an expert because of his “dubious credentials and his lack of expertise with regard to dryer felts and paper mills ...” Additionally, the district court limited Dr. Millette’s testimony requiring disclosure to the jury that Dr. Millette’s tests were “performed under laboratory conditions which are not the same as conditions at [Henry’s workplace].” This limitation significantly diminished the strength of Dr. Millette’s prospective opinion.
During a pre-trial conference, the district court reversed its decision to exclude Dr. Cohen’s testimony. The district court explained that in the Barabins’ response to the motions in limine, the Barabins clarified Dr. Cohen’s credentials, including that he had testified in other cases. The district court did not hold a Daubert hearing. See Daubert, 509 U.S. at 589, 113 S.Ct. 2786 (setting forth the trial judge’s gatekeeping obligation to ensure that prospective expert testimony is reliable).
B. Procedural history
After presentation of Plaintiffs’ case, AstenJohnson and Scapa filed motions for judgment as a matter of law, which were denied. After closing arguments and before the verdict, AstenJohnson and Scapa renewed their motions for judgment as a matter of law. The district court again denied the motions.
The jury found in favor of the Barabins and awarded damages totaling $10,200,000. The district court granted AstenJohnson’s and Scapa’s motions to vacate the judgment and scheduled a reasonableness hearing. After the hearing and after ruling that the damages award was reasonable, the district court applied an offset of $836,114.61 for previous settlements,[5] ulti *431 mately awarding $9,373,152.12, plus $9,266.73 in costs, to the Barabins.
Scapa then filed a motion for a new trial or, in the alternative, for remittitur, and also incorporated AstenJohnson’s motion for a new trial. AstenJohnson and Scapa sought a new trial based on, among other things, improper admission of expert testimony. The district court denied the motions in their entirety.
After entry of judgment in favor of the Barabins, AstenJohnson and Scapa filed timely notices of appeal. We consolidated these two appeals.
II. STANDARDS OF REVIEW
Evidentiary rulings are reviewed for abuse of discretion; however, we review a district court’s interpretation of the Federal Rules of Evidence de novo. See United States v. Urena, 659 F.3d 903, 908 (9th Cir.2011), cert. denied, — U.S. -, 132 S.Ct. 1608, 182 L.Ed.2d 214 (2012).
We review a district court’s denial of a motion for new trial for abuse of discretion. See United States v. Montes, 628 F.3d 1183, 1187 (9th Cir.), cert. denied, — U.S. -, 131 S.Ct. 2468, 179 L.Ed.2d 1229 and — U.S. -, 132 S.Ct. 52, 180 L.Ed.2d 920 (2011).
III. DISCUSSION
The district court abused its discretion when it failed to conduct a Daubert hearing or otherwise make relevance and reliability determinations regarding expert testimony.
In its role as gatekeeper, the district court determines the relevance and reliability of expert testimony and its subsequent admission or exclusion. See Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir.2011). Admission or exclusion under Daubert rests on the scientific reliability and relevance of the expert testimony. See id. The expert’s opinion must be deduced from a “scientific method” to be admissible. Id. (citation omitted). “The test under Daubert is not the correctness of the expert’s conclusions but the soundness of his methodology....” Primiano v. Cook, 598 F.3d 558, 564 (9th Cir.2010), as amended (footnote reference and alteration omitted).
Daubert provided the following non-exhaustive factors for consideration in assessing the reliability of proffered expert testimony:
(1) whether the scientific theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) whether there is a known or potential error rate, and (4) whether the theory or technique is generally accepted in the relevant scientific community.
Mukhtar v. Cal. State Univ., 299 F.3d 1053, 1064 (9th Cir.2002) (citations omitted).
After the district court’s ruling resolving AstenJohnson’s motion in limine by excluding Dr. Cohen from testifying as an expert witness, the Barabins filed a Motion for Pre-Trial Daubert Hearing seeking reconsideration of the district court’s ruling. Included within the motion was information describing Dr. Cohen’s use as an expert in the Washington state courts and in other courts. After considering the information contained in the Barabins’ motion, the district court declined to hold a Daubert hearing. Rather, the district court simply reversed its prior exclusion of Dr. Cohen’s testimony. The extent of the court’s explanation was: “I think plaintiffs did a much better job of presenting to me the full factual basis behind Mr. Cohen testifying and his testimony in other cases----”
*432 Unfortunately, because no Daubert hearing was conducted as requested, the district court failed to assess the scientific methodologies, reasoning, or principles Dr. Cohen applied. None of the Daubert factors was considered. Instead, the court allowed the parties to submit the experts’ unfiltered testimony to the jury.
It is notable that the district court’s order originally addressing AstenJohnson’s motion in limine expressed concerns with Dr. Millette’s testing procedures and excluded Dr. Cohen’s testimony altogether, due to its concerns regarding his credentials and expertise. Only after the Barabins provided additional information that Dr. Cohen had testified in other state court proceedings did the district court allow Dr. Cohen to testify as an expert.[6]
In federal courts, the admission of expert testimony is governed by Federal Rule of Evidence 702, as elucidated by the Supreme Court in Daubert. At the time of the trial in this case, Rule 702 provided:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
Fed.R.Evid. 702 (2010).
Compliance with Rule 702 is gauged by the district court’s assessment of the reliability of the proffered expert testimony. See Daubert, 509 U.S. at 589, 113 S.Ct. 2786. Specifically, the district court is charged with determining whether the proffered expert testimony is trustworthy. See id. at 590 n. 9, 113 S.Ct. 2786. “In a case involving scientific evidence, evidentiary reliability will be based upon scientific validity.” Id. (emphases in the original). Scientific validity is, in turn, assessed in large part by the degree to which the theories propounded by the expert have been subjected to and survived scrutiny in the relevant scientific community. See Mukhtar, 299 F.3d at 1063-64.
As we observed in Mukhtar, the decision to admit or exclude expert testimony is often the difference between winning and losing a case. See id. at 1067-68 (noting that once the challenged expert testimony was excluded no evidence of discrimination remained). The potentially significant influence of expert testimony underscores the importance of assiduous “gatekeeping” by trial judges.
Once presented with the additional information in the Barabins’ response to the motion in limine, at a minimum the district court was required to assess the scientific reliability of the proffered expert testimony. See Ellis, 657 F.3d at 982 (“Under Daubert, the trial court must act as a ‘gatekeeper’ to exclude junk science that does not meet Federal Rule of Evidence 702’s reliability standards ... ”) (citation omitted). In failing to do so, the district court neglected to perform its gatekeeping role. See Mukhtar, 299 F.3d at *433 1066 (“Kumho [Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999),] and Daubert make it clear that the court must, on the record, make some kind of reliability determination.”) (citation omitted) (emphasis in the original).
Rather than making the required determinations, the district court left it to the jury to determine the relevance and reliability of the proffered expert testimony in the first instance. In its order, the district court wrote:
There is obviously a strong divide among both scientists and courts on whether such expert testimony is relevant to asbestos-related cases. In the interest of allowing each party to try its case to the jury, the Court deems admissible expert testimony that every exposure can cause an asbestos-related disease.
(Emphases added).
Under our precedent, the district court’s decision to allow presentation of the expert testimony to the jury without making any gateway determinations regarding relevance and reliability constituted an abuse of discretion requiring a new trial. See id. at 1063 (noting the “trial court’s ‘special obligation’ to determine the relevance and reliability of an expert’s testimony”) (citation omitted); see also id. at 1068 (remanding for a new trial where the expert’s testimony was admitted “without the proper reliability determination” and the error was not harmless).[7]
The district court committed reversible error when it failed to assess the proffered expert testimony for relevance and reliability. See id. Our decision in Mukhtar dictates that a new trial be provided in this circumstance. See id. Accordingly, the district court abused its discretion when it denied AstenJohnson’s and Scapa’s motions for a new trial. See Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (explaining that we may reverse the denial of a motion for a new trial when the district court has “made a mistake of law”) (citation omitted).
JUDGMENT VACATED and CASE REMANDED for a new trial.
Each party shall bear its own costs on appeal.

. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

. Because of our determination that a new trial is warranted on this basis, we do not address the other issues raised on appeal.

. Pleural malignant mesothelioma is a rare cancer that affects the tissue surrounding the lungs. See http://www.mayoclinic.com (last visited Nov. 6, 2012).

. There was some dispute as to whether Dr. Cohen was legitimately referred to as a "doctor.” We give him the benefit of the doubt because his correct title is not dispositive.

. Washington law provides that if a plaintiff receives a settlement from another party, an offset occurs for the next tortfeasor unless the first settlement was unreasonable. See Wash. Rev.Code § 4.22.060(2).

. It is unlikely that the Washington state courts where Dr. Cohen testified used the Daubert standard in assessing the admissibility of Dr. Cohen's testimony. See State v. Sipin, 130 Wash.App. 403, 123 P.3d 862, 867 (2005) (“In Washington, the Frye [v. United States, 293 F. 1013 (App.D.C.1923)] test is used to determine the admissibility of novel scientific evidence....”) (citation omitted); see also Daubert, 509 U.S. at 587, 113 S.Ct. 2786 ("[T]he Frye test was superseded by the adoption of the Federal Rules of Evidence.”) (footnote reference omitted).

. The Barabins do not argue that any error in admitting Dr. Cohen's testimony was harmless.