**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES LIEBSACK, as guardian for
Madlyn Liebsack; JON LIEBSACK,
co-personal representatives of the
Estate of Madlyn Liebsack,
                   *Plaintiffs-Appellants*,

v.

UNITED STATES OF AMERICA,
                   *Defendant-Appellee*.

No. 11-35158

D.C. No.
3:07-cv-0071-
RRB

JAMES LIEBSACK, as guardian for
Madlyn Liebsack; JON LIEBSACK,
co-personal representatives of the
Estate of Madlyn Liebsack,
                   *Plaintiffs-Appellants*,

v.

UNITED STATES OF AMERICA,
                   *Defendant-Appellee*.

No. 11-35479

D.C. No.
3:07-cv-0071-
RRB

JON LIEBSACK, co-personal
representative of the Estate of
Madlyn Liebsack,
                *Plaintiff-Appellant*,

JAMES LIEBSACK, as guardian for
Madlyn Liebsack,
                *Plaintiff-Appellee*,

                v.

UNITED STATES OF AMERICA,
                *Defendant-Appellant*.

No. 11-35535

D.C. No.
3:07-cv-0071-
RRB

OPINION

Appeals from the United States District Court
for the District of Alaska
Ralph R. Beistline, Chief District Judge, Presiding

Argued and Submitted
May 21, 2013—Anchorage, Alaska

Filed September 23, 2013

Before:  A. Wallace Tashima, Richard C. Tallman,
and N. Randy Smith, Circuit Judges.

Opinion by Judge Tashima

# SUMMARY[*]

## Federal Tort Claims Act / Alaskan Law

The panel reversed the district court's judgment in favor of the federal government in an action, brought pursuant to the Federal Tort Claims Act, alleging that federal healthcare providers negligently failed to monitor lithium levels on a patient.

Plaintiffs alleged that none of the government's evidence about the treating nurse practitioner conformed with an Alaska statute requiring specialized expert testimony in medical malpractice actions. The panel held that Alaska Statute § 09.20.185 was a state rule of "witness competency" that applied to this action under Federal Rules of Evidence 601, as well as part of Alaska's substantive law, thereby making it applicable to Federal Tort Claims Act actions under 28 U.S.C. § 2674. The panel concluded that none of the government's evidence regarding the nurse practitioner's negligence complied with § 09.20.185. The panel concluded that the error could not have been harmless, and remanded for a new trial.

# COUNSEL

Christian N. Bataille (argued), Flanigan & Bataille, Anchorage, Alaska, for Plaintiffs-Appellants/Cross-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Stuart F. Delery, Acting Assistant Attorney General, Thomas M. Bondy, Daniel J. Lenerz (argued), Attorneys, Appellate Staff, Civil Division. United States Department of Justice, Washington, D.C.; Karen Loeffler, United States Attorney, Anchorage, Alaska, for Defendant-Appellee/Cross-Appellant.

## OPINION

TASHIMA, Circuit Judge:

Madlyn Liebsack suffered from a schizoaffective disorder that was treated, in part, with lithium. In 2002, she had a heart attack due to an elevated level of lithium in her bloodstream and was left in a permanent vegetative state. Her guardian, Edward Liebsack, sued the United States under the Federal Tort Claims Act ("FTCA"), asserting that federal healthcare providers negligently failed to monitor Madlyn's lithium levels. The government's primary defense at the ensuing bench trial was that the fault lay with another, non-federal healthcare provider. Specifically, the government argued that the fault lay with Cindy Jones, an advanced nurse practitioner who was responsible for Liebsack's psychiatric care. The district court found that Nurse Jones was 80% at fault for Liebsack's injuries, that the United States was 15% at fault, and that Liebsack's assisted-living home was 5% at fault. The court then awarded Liebsack 15% of her past and future medical expenses.

Liebsack appeals both the liability and damages rulings, and the government cross-appeals on damages. Liebsack's central argument on liability is that none of the government's evidence about Nurse Jones conformed with an Alaska statute requiring specialized expert testimony in medical malpractice

actions. Because we conclude that this evidence should not have been admitted, we reverse the judgment and remand for a new trial. We address the cross-appeals on damages in a separate memorandum disposition filed concurrently with this opinion and, on those issues, affirm the district court.

## I.

### A.

In the period leading up to the heart attack, Liebsack was living at the Lakeview assisted living facility. Nurse Jones, her treating psychiatric provider, worked at the Anchorage Community Mental Health Center ("ACMHC), a non-federal facility. On October 11, 2002, Lakeview staff took Liebsack to ACMHC after noticing leg-buckling and jerky movements. Nurse Jones saw Liebsack and considered a variety of potential causes for the symptoms, one of which was an elevated level of lithium. Nurse Jones ordered several blood tests, including one for lithium. She also referred Liebsack to her treating physician, Madeleine Grant, "[t]o see if there was any other metabolic issues or neurological issues going on at the time." The referral to Dr. Grant was not for the purpose of assessing lithium toxicity because that was Nurse Jones' "area of expertise." Dr. Grant worked at the Anchorage Neighborhood Health Center, a federally-funded healthcare provider ("the government health center").

Liebsack had her blood drawn at the government health center on October 14, 2002. For disputed reasons, the government lab did not run the lithium test. Liebsack then saw Dr. Grant on October 16, 2002. Dr. Grant was unsure why Liebsack was scheduled for a visit and Liebsack was unable to tell her. Dr. Grant surmised that the visit may have

been a follow-up to a recent visit for respiratory illness and eye complaints. Dr. Grant confirmed that these issues had been resolved, and also reviewed the results from the recent lab work (which did not include a lithium test). Dr. Grant had not received a written referral or phone call from Nurse Jones, though Liebsack did tell Dr. Grant that Jones "wanted to talk to" her. Dr. Grant did not think she needed to call Nurse Jones because she did not consider Liebsack to be a reliable source of information in light of her mental illness. Dr. Grant and other witnesses also testified that efforts to learn Liebsack's medical history (beyond the records available at the government clinic) were generally futile.

Liebsack then saw Nurse Jones for a follow-up visit on October 18, 2002. Jones confirmed that Liebsack had had her blood drawn and had seen Dr. Grant. Jones also noted that Liebsack was no longer showing symptoms of jerky movements; thus, Jones was no longer concerned about potential lithium toxicity. She never sought to confirm the results of the lithium test she had ordered. On November 10, 2002, Liebsack suffered a heart attack, wich led to this lawsuit.

## B.

Liebsack's brother and guardian, Edward Liebsack, brought suit in state court against several defendants, including ACMHC, the Lakeview assisted living facility, and the United States.[1] The United States then removed the

---

[1] While the appeal was pending, we granted a motion to substitute the plaintiff-appellant because of Liebsack's death. Jon Liebsack and James Liebsack, as co-personal representatives of the Estate of Madlyn Liebsack, were substituted for Edward Liebsack, as guardian for Madlyn Liebsack.

action to federal court, and all other parties eventually settled. At the ensuing bench trial, Liebsack argued that her injuries were due to the negligence of (1) the government lab, for failing to run the lithium test; and (2) Dr. Grant, for failing to determine the reason for Liebsack's October 16 visit. The government argued that all of the fault lay with (1) Nurse Jones, for failing to follow through on her lithium toxicity concerns; and (2) Lakeview, for failing to relay their concerns about Liebsack's health to Dr. Grant.

The district court found that Nurse Jones, Lakeview, and the government lab were all negligent, but that Dr. Grant was not. It apportioned fault as follows: Nurse Jones – 80%; Lakeview – 5%; government lab – 15%; Dr. Grant – 0%. With respect to Nurse Jones, the court held that she had "failed to follow up on the laboratory request, failed to seek further testing, and failed to contact Dr. Grant regarding her concerns." The court also noted that "it had been over eight months since Madlyn's last lithium test, far longer than appropriated [sic] for one in Madlyn's condition. Given Madlyn's history and symptomology, testing should have been more frequent." The court then ordered the government to pay non-economic damages and 15% of Liebsack's past and future medical expenses. Liebsack filed this timely appeal, and the government cross-appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II.

A district court's finding of negligence is reviewed for clear error. *Vollendorff v. United States*, 951 F.2d 215, 217 (9th Cir. 1991). "The existence and extent of the standard of conduct are questions of law, reviewable *de novo*, but issues

of breach and proximate cause are questions of fact, reviewable for clear error." *Id*.

### III.

### A.

Liebsack contends that the district court's finding regarding Nurse Jones' negligence was erroneous because the government did not present an expert qualified under Alaska Statute § 09.20.185.[2]  That provision mandates that "[i]n an action based on professional negligence, a person may not testify as an expert witness on the issue of the appropriate standard of care unless the witness is:" (1) licensed by a state or another country; (2) "trained and experienced in the same discipline or school of practice as the defendant or in an area directly related to a matter at issue"; and (3) "certified by a board recognized by the state as having acknowledged expertise and training directly related to the particular field or matter at issue."  The government contends that § 09.20.185 does not apply to this action and that, even if it did, there was still sufficient evidence to sustain the district court's ruling.[3]

---

[2] Although it was disputed at trial, on appeal, the parties do not challenge the district court's findings that: (1) the heart attack was caused by elevated lithium levels; (2) Liebsack's lithium level was elevated at the time of her blood test on October 14, 2002; and (3) treatment for lithium toxicity during the relevant time period would have prevented the heart attack.

[3] The government does not argue that Liebsack waived the § 09.20.185 argument, although it appears that Liebsack never expressly brought the statute to the district court's attention.  Nevertheless, she did object to the testimony of Dr. Simono on the grounds that she was "not qualified to offer the standard of care as to a psychiatrist," and to the testimony of Dr.

We agree with Liebsack that § 09.20.185 applies to this action and that none of the testimony regarding Nurse Jones conformed with that provision.

"[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law." *Molzof v. United States*, 502 U.S. 301, 305 (1992); 28 U.S.C. § 2674. But "[i]t is clear that federal law governs all procedural aspects of a claim under the [FTCA]." *Schwarder v. United States*, 974 F.2d 1118, 1126 (9th Cir. 1992). In the analogous setting of diversity suits, the Federal Rules of Evidence "ordinarily govern." *Wray v. Gregory*, 61 F.3d 1414, 1417 (9th Cir. 1995). However, "where a state evidence rule is intimately bound up with the rights and obligations being asserted, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), mandates the application of a state rule in a diversity suit." *Wray*, 61 F.3d at 1417 (internal quotation marks, alterations, and citations omitted). Moreover, Federal Rule of Evidence 601 instructs that, in civil cases, "state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision."

With these parameters in mind, we must determine if § 09.20.185 applies to an FTCA action based on medical negligence. We have found no Ninth Circuit case directly on point. Thus, we begin with *Legg v. Chopra*, in which the Sixth Circuit addressed a nearly identical question in the context of a medical malpractice diversity action. 286 F.3d 286 (6th Cir. 2002). The state statute at issue in *Legg* required a testifying medical expert to be licensed in

Kahn on a similar basis. These objections were sufficient to preserve the claim of error.

Tennessee or a contiguous state in the relevant specialty, and to have practiced in one of those locations for at least one year preceding the alleged injury. *Id*. at 291. The court first noted that "some state evidentiary rules have substantive aspects, thereby defying the substance-procedure distinction and creating a potential *Erie* conflict." *Id*. at 290. In particular, it observed that "[s]tate witness competency rules are often intimately intertwined with a state substantive rule." *Id*. The court then held that Rule 601 "resolve[s] this potential conflict" and "incorporates the *Erie* mandate" by requiring application of state witness competency rules in federal court. *Id*. Thus, the court held that the Tennessee competency statute applied in the diversity action before it.

*Legg* also held that application of Rule 601 (and the Tennessee statute) did not displace Rule 702, which – together with the analysis in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) – governs the admissibility of expert evidence. *See Legg*, 286 F.3d at 291. Specifically, the court ruled that the Tennessee statute "is directed at establishing the substantive issue in the case, and [Rule 702] is a gatekeeping measure designed to ensure 'fairness in administration' of the case." *Id.* at 292 (quoting Fed. R. Evid. 102). Thus, *Legg* instructed district courts first to apply any state competency requirements pursuant to Rule 601, and then to determine if the testimony is "otherwise admissible" under Rule 702 and *Daubert*.

At least one other circuit and a district court have followed the reasoning of *Legg*.[4] And, although we have not

---

[4] *See, e.g.*, *McDowell v. Brown*, 392 F.3d 1283, 1294–96 (11th Cir. 2004); *Mann v. United States*, No. 11-8018, 2012 WL 273690, at *10–11

directly addressed the issue, our precedent is in accord. In *Jerden v. Amstutz*, 430 F.3d 1231 (9th Cir. 2005), we addressed a medical malpractice diversity action arising under Oregon law. The district court had struck one of the plaintiff's experts for failing to satisfy Oregon's requirement that a malpractice expert must show knowledge of what is "proper conduct by practitioners in the community." *Id*. at 1235. On appeal, we recognized that "[p]ursuant to Federal Rule of Evidence 601, the district court was required to follow the Oregon locality rule when presented with the testimony of out-of-town medical experts who testify as to the appropriate standard of care" for that community or a similar community under circumstances similar to those which confronted the defendant. *Id*.[5] Similarly, in *Trevino v. United States*, we held that the district court was required, under Rule 601, to follow Washington's practice of granting trial courts broad discretion to determine the competence of expert witnesses. 804 F.2d 1512, 1516 (9th Cir. 1986); *see also Higgenbottom v. Noreen*, 586 F.2d 719, 722 (9th Cir. 1978) (applying similar Oregon state precedent through Rule 601).

The reasoning in *Legg*, *Jerden*, and *Trevino* applies squarely to the case at bench. State substantive law applies in FTCA actions, and the Alaska statute here is intertwined with the state's professional negligence law because it limits what kind of professional can testify to the standard of care.

(D. Ariz. Jan. 31, 2012); *Wright v. United States*, No. 06-01788, 2008 WL 820557, at *3–5 (D. Ariz. Mar. 25, 2008).

[5] The *Jerden* court ultimately ruled that the defendant's objection had been untimely, which arguably renders the discussion of Rule 601 dicta. Nevertheless, its analysis is persuasive on the proper scope of Rule 601.

That limitation, in turn, affects the standard of care against which the defendant's conduct will be tested – an inherently substantive inquiry. *See Jackson v. United States*, 881 F.2d 707, 712 (9th Cir. 1989) ("[The FTCA] specifically makes state law controlling to the extent needed to fix the government's substantive liability." (citations omitted)). Moreover, while the distinction between substance and procedure is often elusive, Rule 601 plainly mandates the application of § 09.20.185 in this matter because it is a rule of witness competency.[6]

As *Legg* recognizes, state competency rules such as § 09.20.185 do not displace Rule 702 and *Daubert*. 286 F.3d at 291. Rule 702 concerns the *admissibility* of scientific evidence, not a witness' competency to testify in the first place. "[A] key to establishing the scope of Rule 601 is to distinguish between competency and admissibility. A witness may be competent but unable to testify as to anything [admissible]." 27 Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 6003 (2d ed. 2013). Thus, for example, a witness might satisfy the specialization and certification requirements under § 09.20.185, but her testimony would be inadmissible if, under Rule 702, it is not "based on sufficient facts or data." As one court has recognized, "possessing requisite credentials alone is not enough to render expert testimony admissible." *Fuesting v. Zimmer, Inc.*, 421 F.3d 528, 535 (7th Cir. 2005), *vacated in part on other grounds*, 448 F.3d 936 (7th Cir. 2006).

---

[6] The government argues that Rule 601 only applies to a narrow set of state competency rules such as those governing a witness's ability to comprehend the proceedings. But this interpretation of Rule 601 is foreclosed by our precedent, discussed above, which has applied Rule 601 more broadly to include state rules of expert witness qualification.

The government relies primarily on two Seventh Circuit cases, but the first is inapposite and the second actually supports Liebsack's view. In *Ueland v. United States*, the court did not address any state rules of witness competence or eligibility to testify, nor did it address the application of Rule 601. 291 F.3d 993 (7th Cir. 2002). Instead, *Ueland* recognized – as do we – that state substantive law applies to FTCA actions, but that courts must still apply Rule 702 to determine the admissibility of expert testimony. *Id.* at 997–98. And in *Wallace v. McGlothan*, 606 F.3d 410 (7th Cir. 2010), the court held (as in *Legg*) that state rules on expert testimony were substantive and thus applied in a diversity action. *Id.* at 419. The state rules in *Wallace* required expert evidence to prove causation for certain kinds of medical negligence cases; thus, the court held that those rules "go to the proof required for the causation element of medical negligence." *Id.* Although *Wallace* also noted that the Federal Rules must govern the "standards for admitting expert evidence," *id.*, this principle is consistent with the cases discussed above, which leave room for application of Rule 702 after state competency standards and Rule 601 are satisfied.

We therefore hold that § 09.20.185 is a state rule of "witness competency" that applies to this action under Federal Rule of Evidence 601, as well as part of Alaska's substantive law, making it applicable to FTCA actions under § 2674.

**B.**

The government presents two additional, alternative arguments, but neither is availing. First, it contends that Nurse Jones' negligence was so obvious that no expert

opinion was necessary and that § 09.20.185 never came into play. The government recognizes that, "[i]n medical malpractice actions . . . the jury ordinarily may find a breach of a professional duty only on the basis of expert testimony." *Clary Ins. Agency v. Doyle*, 620 P.2d 194, 200 (Alaska 1980). But the government invokes "[t]he primary limitation to this rule[:] that expert testimony is not needed in non-technical situations where negligence is evident to lay people." *Kendall v. State, Div. of Corr.*, 692 P.2d 953, 955 (Alaska 1984). We disagree that this exception applies. The alleged negligence here involved the psychiatric treatment of a schizoaffective patient, the interpretation of potential symptoms of lithium toxicity, and the duties associated with lithium therapy. This was not a situation where negligence would be "evident to lay people." *See Hymes v. Deramus*, 119 P.3d 963, 968 n.23 (Alaska 2005) (noting that claims regarding "treatment decisions, prescriptions, or other medical issues that are arguably technical" would require expert evidence, whereas "the failure to provide medication and adequate access to licensed physicians" would not). The government was therefore required to provide expert testimony in conformance with § 09.20.185.

The government next contends that its evidence *did* comply with § 09.20.185. The only colorable argument in this regard concerns the testimony of Dr. Simono,[7] a board-

---

[7] Aside from Dr. Simono, the government points to the testimony of Nurse Jones, Dr. Lucy Curtiss, and Dr. Robert Kahn. But none of their testimony was sufficient. Nurse Jones did not testify about the applicable standard of care, nor (unsurprisingly) did she testify that she had breached any standard of care. As for Dr. Curtiss, a psychiatrist who had previously supervised nurses, the government concedes that she "was not a retained expert witness and did not testify as a retained expert witness." Thus, her opinion could not have sustained the negligence finding against Nurse

certified family practice physician who testified that Nurse Jones should have followed up on the lab tests. The government argues that she was qualified under § 09.20.185 because the "matter at issue" was simply a medical provider's responsibility to follow up on tests he or she has ordered. This argument – essentially a rehash of the claim that no expert testimony was needed – frames the issue too narrowly. The crux of the negligence claim was that Nurse Jones breached the standard of care for psychiatric treatment of a patient with lithium toxicity symptoms. Indeed, the district court's ruling was not limited simply to the failure to "follow-up," but instead discussed several shortcomings in Nurse Jones's conduct, including among other things, the failure to contact Dr. Grant and the failure to order lithium tests more frequently. Thus, Dr. Simono was not qualified under Alaska law to testify to the "matter at issue."[8] In sum, none of the government's evidence regarding Nurse Jones' negligence complied with § 09.20.185.

---

Jones. Finally, even assuming Dr. Kahn's testimony supported the district court's findings, he is a family practitioner who was not qualified under Alaska law to testify about the matter at issue. Indeed, Dr. Kahn was careful to emphasize that he "did not know the standard of care for a psychiatric nurse practitioner" and that he "did not give opinions on Cindy Jones' practice or behavior."

[8] It is telling, in this regard, that the government moved to supplement its expert witness list more than two months after the deadline to include a psychiatric expert that could testify "about the standard of care for providers treating mentally ill patients with lithium." The court denied the motion as untimely. Left with no psychiatric expert, the government sought to coax psychiatric opinions from its family medicine experts, who had been called primarily to testify to the conduct of Dr. Grant.

## C.

Although the erroneous admission of expert testimony is subject to harmless error analysis, Liebsack has easily shown "that the allegedly erroneous evidentiary ruling more probably than not was the cause of the result reached." *Jauregui v. City of Glendale*, 852 F.2d 1128, 1133 (9th Cir. 1988).  Aside from the evidence discussed above, the government points to no other evidence that could have supported the district court's ruling as to Nurse Jones. Moreover, because the finding against Nurse Jones cannot stand, neither can the 15% liability finding against the government because the relative liability of each actor is intertwined (both proportionally and substantively).  *See* Alaska Stat. § 09.17.080(c).  In other words, the error could not have been harmless and we must remand for a new trial. *See Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1068 (9th Cir.), *amended on denial of reh'g en banc*, 319 F.3d 1073 (9th Cir. 2002).[9]  The judgment of the district court is reversed and the case is remanded for a new trial. Liebsack shall recover her costs on appeal, to the extent costs can be taxed against the government.

**REVERSED and REMANDED.**

---

[9] The viability of *Mukhtar*'s mandatory new-trial rule is currently subject to en banc consideration.  *See Barabin v. AstenJohnson, Inc.*, 700 F.3d 428 (9th Cir. 2012), *reh'g en banc granted*, 710 F.3d 1074 (9th Cir. 2013). The proposed alternative, at least as discussed in Judge Graber's panel concurrence, *see id.* at 434 (Graber, J., concurring), would require remand for a limited evidentiary hearing to see if the evidentiary error can be resolved without a new trial.  There is no need to await the results of *Barabin*, however, because the error in this case could not be cured at an evidentiary hearing.  The record shows that none of the witnesses could have qualified under § 09.20.185.