# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 3, 2022

Lyle W. Cayce
Clerk

No. 21-10455

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ISLAM YASER-ABDEL SAID,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:20-CR-292-1

Before KING, ELROD, and SOUTHWICK, *Circuit Judges*.

PER CURIAM:*

Islam Said pled guilty to harboring a fugitive, namely, his father, from arrest. On appeal, Said challenges both the constitutionality of his conviction and his sentence. Finding no reversible error, we AFFIRM.

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 21-10455

## FACTUAL AND PROCEDURAL BACKGROUND

Yaser Said ("Yaser") allegedly murdered his two daughters on January 1, 2008. A state grand jury in Dallas County, Texas, indicted Yaser for capital murder, and he fled the country soon after. Yaser was subsequently charged with flight to avoid prosecution under 18 U.S.C. § 1073. By 2014, he was on the FBI's Top Ten Most Wanted Fugitives list.

This appeal concerns Yaser's son, Islam Said ("Said"). After his sisters were killed, Said moved to Egypt to live with his family. He remained there until returning to Texas in 2011. Said claimed in a 2015 interview with the FBI that he had not seen his father since his sisters were killed in 2008. In 2017, Said's apartment's maintenance director encountered an older man — whom he later identified as Yaser — while repairing a water leak in Said's apartment. The maintenance director contacted the FBI, which dispatched agents to investigate. When those agents encountered Said and sought permission to search the apartment, Said refused. The FBI and local law enforcement then obtained a warrant and returned to search the residence. When the FBI returned, Said's apartment was empty, the back door was unlocked, branches on a bush below the patio were bent, and a pair of eyeglasses lay smashed on the ground. DNA testing revealed that Yaser had been living there. Said then fled to Canada and remained there until January 2018.

In August 2020, the FBI began surveillance on two houses owned by the daughter of Yassein Said ("Yassein"), who is Yaser's brother and Said's uncle. On August 26, 2020, Yaser was apprehended at one of the residences, while Said and Yassein were apprehended at the other on the same day. Law enforcement also obtained Said's phone at that time.

In October 2020, Said was charged with conspiracy to conceal Yaser under 18 U.S.C. § 371, and with harboring Yaser from arrest from 2017 to

No. 21-10455

2020, violating 18 U.S.C. § 1071. A month later, the Government added a third count via superseding indictment: conspiracy to obstruct an official proceeding under 18 U.S.C. § 1512(k) (18 U.S.C. § 1512(c)(2)). Around the same time, Said filed a motion to dismiss the first two counts on the ground that Section 1071 is unconstitutionally vague. The district court denied that motion.

In January 2021, Said pled guilty to all three counts without a plea agreement. The presentence report ("PSR") submitted to the district court identified first-degree murder as the underlying offense and applied the maximum base level offense of 20. *See* U.S.S.G. § 2X3.1(a)(3)(B). The PSR added a two-level enhancement for obstruction of justice and a three-level downward variance for acceptance of responsibility, ultimately resulting in an advisory imprisonment range of 30 to 37 months.

Regarding the PSR's sentencing recommendation, Said objected to the PSR's use of first-degree murder as the underlying offense to calculate the advised imprisonment range, arguing that the base offense should have been harboring a fugitive, not first-degree murder. Said also objected to the obstruction of justice enhancement on the ground that there was no evidence that he impeded the "instant offense of conviction." Along with these objections, Said filed a sentencing memorandum in which he argued for a downward variance based on his intellectual disability and abusive childhood. In its response, the Government moved for an upward variance on the ground that the Guidelines failed to account for the resources expended by law enforcement to apprehend Yaser, among other things.

At the sentencing hearing, the district court sustained Said's objection to the first-degree murder guideline but overruled his objection to the obstruction of justice enhancement. The district court ultimately found an

offense level of 16 and criminal history category of 1, which prescribes an advisory imprisonment range of 21 to 27 months.

The district court then heard testimony from FBI Special Agent Taylor Page, who testified that one of Said's fellow inmates informed the FBI that Said was faking his intellectual disability. On cross-examination, Said's counsel challenged the credibility of a jailhouse FBI informant. The Government objected to one of Said's counsel's questions, the district court sustained the objection, and Said's counsel asked no further questions regarding the informant.

Said then presented two witnesses on his behalf. Dr. Wendy Elliot testified that Said did in fact have an intellectual disability. Said's cousin testified about Said's fractured homelife.

The district court imposed a sentence of 120 months, about four times the Guidelines range. The district court stated that an upward variance was necessary to account for: (1) Said's attempts to blame individuals of another race for his sisters' murders; (2) the vast resources expended by law enforcement in apprehending Yaser; (3) threats that Said made to the agents who arrested Yassein; and (4) material that appeared to be child pornography found on Said's phone pursuant to his arrest. Said timely appealed.

## DISCUSSION

Said challenges both the constitutionality of his harboring conviction and his sentence. We first consider his conviction under the harboring statute, 18 U.S.C. § 1071. We then consider his sentencing.

### I. *Constitutionality of 18 U.S.C. § 1071*

Said was charged with violating 18 U.S.C. § 1071, which states that anyone who "harbors or conceals" certain categories of persons may face up to five years imprisonment. Said moved to dismiss the Section 1071 charge,

arguing that the provision was unconstitutionally vague because the statute does not clearly identify what conduct is unlawful. The district court denied Said's motion. Said then pled guilty.

A preserved challenge to the constitutionality of a statute is reviewed *de novo. United States v. Copeland*, 820 F.3d 809, 811 (5th Cir. 2016). Said raised the issue of vagueness in his motion to dismiss. A claim that "would extinguish the government's power to constitutionally prosecute . . . if the claim were successful" is not waived by the defendant's guilty plea. *Class v. United States*, 138 S. Ct. 798, 805–06 (2018).

Section 1071 provides that:

> Whoever harbors or conceals any person for whose arrest a warrant or process has been issued under the provisions of any law of the United States, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person, shall be fined under this title or imprisoned . . . .

18 U.S.C. § 1071.

Said argues that the word "harbor" is unconstitutionally vague because it is unclear what conduct is criminalized by the word "harbor." Said suggests that the statute could either criminalize "harboring a fugitive *with the intent* of preventing the fugitive's discovery and arrest," or "harboring a fugitive if, *regardless* of the defendant's intent, the acts helped to 'prevent [the fugitive's] discovery and arrest.'" *See id.*

Vague criminal statutes "violate[] the first essential of due process." *Johnson v. United States*, 576 U.S. 591, 595–96 (2015) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). To meet the high bar of unconstitutionality, a statute must be "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Id.* at 595. Further, in the majority of cases,

vagueness review looks no further than the facts before the court. Unless a vagueness challenge "involve[s] First Amendment freedoms," this court will evaluate "the statute only in light of the facts of the case at hand." *United States v. Edwards*, 182 F.3d 333, 335 (5th Cir. 1999).[1]

The factual stipulation that Said signed and submitted to the court in support of his guilty plea describes conduct that an ordinary person would understand to violate Section 1071 under either construction of the statute. Specifically, Said admitted he knew there was a federal arrest warrant for his father and provided him shelter "in order to prevent his discovery, arrest, and prosecution." *See* 18 U.S.C. § 1071. An ordinary person would understand these actions to violate Section 1071's prohibition on harboring fugitives, so Said's as-applied vagueness challenge must fail. *See Edwards*, 182 F.3d at 335.

## II. *Substantive reasonability of the sentence*

Said also challenges his sentence as substantively unreasonable. We review whether a sentence was "reasonable" under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007).

A sentence is unreasonable if it "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Smith*, 440 F.3d 704, 708 (5th Cir. 2006). Our review is deferential, and we "may not reverse the district court's ruling just because it would have determined that an

---

[1] Said suggests that the First Amendment is implicated in his vagueness challenge. He provides no support for this statement, nor does he press the argument beyond simply stating it as true. This argument is thus forfeited for a failure to adequately brief the issue, and we do not analyze a facial challenge. *See Coleman v. United States*, 912 F.3d 824, 829 n.5 (5th Cir. 2019).

alternative sentence was appropriate." *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008). The degree of deference, though, varies with the degree of variance from the Guidelines: when a district court issues a non-Guidelines sentence, it must "more thoroughly articulate its reasons" than when it issues a sentence within the Guidelines range. *Smith*, 440 F.3d at 707. These reasons must be "fact-specific and consistent with the sentencing factors enumerated in [18 U.S.C. §] 3553(a)." *Id.*

Said argues that his 120-month sentence, which is more than 4 times the top of the 21-to-27-month Guideline range, is substantively unreasonable. He argues that the district court (1) failed to account for his intellectual disability and abusive childhood, (2) gave too much weight to irrelevant factors and (3) made a "clear error of judgment in balancing the sentencing factors." *See id.* at 708.

Concerning the first element of our *Smith* analysis, Said argues that the district court failed to account for two significant factors in arriving at the sentence: his intellectual disability and abusive childhood. The only indication that the district court failed to consider these factors, though, is the district court's failure to mention these considerations explicitly in pronouncing the sentence.

"[A] checklist recitation of the [S]ection 3553(a) factors is neither necessary nor sufficient for a sentence to be reasonable." *Id.* at 707. We also have held a district court's factual findings need not be explicitly stated, and it may "implicitly adopt[] the findings in the PSR" — particularly when it makes rulings regarding objections to the same. *See United States v. Anderson*, 174 F.3d 515, 526 n.3 (5th Cir. 1999). Such was the case here. Said presented considerable information to the district court at the sentencing hearing regarding his disability and troubled upbringing. A doctor testified that Said has an IQ of 62, which was corroborated by earlier records and even

Government testimony.  The PSR indicated that Said was enrolled in special education courses in high school because he could not read well, and that he dropped out of school in the ninth grade.  The PSR established that Said was abandoned by his mother, that Yaser had been "sexually abusing [his daughters] for years" and that he had struck Said and his sisters.  Portions of the PSR established Said's diminished capacity to some degree.[2]  Because the evidence had just been introduced, it is inconceivable that the district court was unaware of Said's intellectual disabilities and troubled childhood, some of which were undisputed.   Even if we do not know how the court evaluated that evidence, we do know that the sentence reflected that evaluation.   Under *Anderson*, the court implicitly took the evidence into account.  *See Anderson*, 174 F.3d at 526 n.3.

Said next claims the district court gave too much weight to irrelevant factors.  In particular, Said argues the district court gave too much weight to Said's attempt to blame the murder of his sisters on "Mexicans" and the enormous resources expended by the Government to apprehend Yaser.  Said's principal complaint is that the resources expended by the Government should not have been considered because they were already included in the three-level enhancement and because Said harbored Yaser for only three of the twelve years Yaser was a fugitive.

---

[2] Said also argues that the district court committed *procedural* error by limiting defense counsel's cross-examination of the case agent during the sentencing hearing, thereby preventing counsel from adequately testing the reliability of a jailhouse informant used by the Government to challenge Said's disability.  We review such a challenge to the district court's decision to exclude evidence for abuse of discretion, subject to harmless error analysis.  *See United States v. Solis*, 299 F.3d 420, 442 (5th Cir. 2002).  Because sufficient evidence of bias was already before the court, and because we hold that the district court implicitly adopted the PSR's findings regarding diminished capacity, any potential error limiting further examination of the informant's motive was harmless.

A sentencing court may "give[] extra weight to circumstances already incorporated in the guidelines." *United States v. Key*, 599 F.3d 469, 475 (5th Cir. 2010). Further, the district court also considered in its sentence what appeared to be child pornography found on Said's cell phone at the time of his arrest and the threats he made against the agents who apprehended his uncle.

Finally, Said argues the district court made a clear error of judgment in balancing the sentencing factors in this case. As detailed above, the district court considered several factors, articulated permissible reasons for a variance, and pronounced the sentence. Although the degree of the variance is considerable and this court may have weighed the Section 3553(a) favors differently, we are not permitted to reweigh the factors. *See Brantley*, 537 F.3d at 349.

AFFIRMED.