# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 18, 2023

Lyle W. Cayce
Clerk

———————

No. 22-40653
Summary Calendar

———————

Beri Dave,

*Plaintiff—Appellant*,

*versus*

Claudine O'Carroll, *Chief of Police - SPI Police Department*; City of South Padre Island, *City Government*; Jaime Rodriguez,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:20-CV-209

———————————————————————

Before Clement, Graves, and Wilson, *Circuit Judges*.

Per Curiam:*

Beri Dave appeals the dismissal of his § 1983 claims against the City of South Padre Island and its various officials. We AFFIRM.

———————————————

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-40653

## I

Beri Dave is a First Amendment auditor. That means he often seeks out—and records—interactions with police across the country. He then uploads those videos to a public YouTube channel.

Back in 2020, Dave was filming one such video in South Padre Island, Texas.[1] Hoping to "record the public actions of on-duty police officers," he wandered down an alley behind the South Padre Island Police Department office. As he approached the building, two officers repeatedly asked if he needed help. Dave waited several moments before directing the officers to "go back to work" since that was "what [he] pays [them] to do."

Dave was then approached by Officer David Laird, who explained that Dave was trespassing. Dave, incredulous that he could be trespassing on "public property that [he] pay[s] for," asked for Laird's name and badge number. In response, Laird grabbed Dave's phone from his hand, placed it on the ground, and had another officer cuff him. Laird then demanded Dave identify himself. Dave refused.

SPIPD officers patted Dave for weapons as Laird spoke with another officer on the scene. After the two concluded that Dave was merely recording, had no weapons, and should be let go, Laird walked Dave a few feet away and removed his cuffs. Dave immediately returned to filming, letting everyone know that they'd be named in his impending lawsuit. Most officers then left the scene.

A short while later, Laird returned with Detective Jamie Rodriguez. The pair had a tense conversation—Dave insisted that the department

_____

[1] The following description of events is pulled from Dave's two pleadings, as well as the several videos (from his phone and from officer bodycams) that he submitted with his complaints.

provide Laird's name and badge number so he could press charges, while Rodriguez asked Dave over and over to identify himself. During the exchange, Dave never stopped recording. With the two at an impasse, Dave walked off the property, all the while demanding to see a supervisor so he could file a complaint against Laird.

True to his word, Dave later filed suit. He alleged that the City, Officer Laird, Detective Rodriguez, and the SPIPD Chief of Police, Claudine O'Carroll, violated his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights. The district court eventually dismissed all claims in two separate orders. First, following a report and recommendation from a magistrate judge, it dismissed all claims against Officer Laird and any claims against O'Carroll and the City of South Padre Island related to Laird's conduct.[2] Several months later, again on the recommendation of the magistrate judge, the court dismissed all claims against Detective Rodriguez and any claims against O'Carroll and the City of South Padre related to Rodriguez's conduct. The court found first that because Rodriguez had died during the litigation and had never been properly served, he could not be sued in his individual capacity. It noted in the alternative, however, that should Dave's claims proceed against Rodriguez's estate, Dave nevertheless failed to show that Rodriguez violated any of his federal rights. It next found that Dave's claims against Rodriguez in his official capacity were, in essence, claims against South Padre Island, and that Dave failed to identify a policy or custom that was the driving force behind any alleged deprivation of rights. Because Dave's claims against O'Carroll and South Padre Island were

---

[2] It appeared to do so on the merits, notwithstanding the fact that Laird was never properly served.

derived from his claims against Rodriguez, the court dismissed all three defendants.

Dave now appeals only the second order focused on Detective Rodriguez.

## II

We review the grant of a motion to dismiss de novo. *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 955 (5th Cir. 2020). "To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The pleadings and other filings of pro se litigants are construed liberally. *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019). Our review is limited to the contents of the pleadings, any attachments to them, and any documents attached to a motion to dismiss that are referred to in the pleadings and that are central to the claims made. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). If the allegations contradict any pleading exhibit, the exhibit controls. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004).

To start, we agree with the district court that Dave's claims against Rodriguez cannot survive because Rodriguez died before he was properly served. That lack of service (which, before he died, Rodriguez properly contested in a Rule 12(b)(5) motion), means the court never held personal jurisdiction over him. *See Omni Cap. Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946) ("[S]ervice of summons is the procedure by which a court . . . asserts

jurisdiction over the person of the party served."). Because Rodriguez was never served (and nor was any derivative party against which Dave could proceed), the claims against him were properly dismissed.

We also agree with the district court's resolution of Dave's claims against O'Carroll. Dave's claims against her are premised on the actions of Rodriguez. But supervisors cannot be held vicariously liable under § 1983 for the conduct of others, and so, Dave's claims against O'Carroll must fail. *See Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

And finally, we agree with the district court that Dave's claims against the City cannot proceed. To succeed against the City, Dave must satisfy the classic *Monell* test. *See Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) ("[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur."). Dave can demonstrate such an official action by showing either "written policy statements, ordinances, or regulations[, or] . . . a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy[,]" or that the alleged unconstitutional action was done at the direction of an official or entity possessing "final policymaking authority." *Webb*, 925 F.3d at 214–15 (cleaned up). Dave shows none of these things. He does not identify any official policy or regulation, nor any widespread practice, nor the order of any final policymaker, that constituted the moving force behind his alleged constitutional violation. Therefore, his claims against the City must also be dismissed.

## III

The district court is AFFIRMED.